NATIONAL HERITAGE LIFE
INSURANCE COMPANY, in
liquidation, Respondent,

v.

Richard R. FRAME, et al., Appellants.

No. ED 77741.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 16, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 12, 2001.

Application to Transfer Denied
April 24, 2001.

Joe David Jacobson, Green, Schaaf & Jacobson, P.C., Donald R. Carmody, John E. Hilton, Carmody, MacDonald, Hilton, Wolf & Keast, Clayton, MO, Attorneys for Appellant.

Don R. Sherman, Robert M. Susman, Ellen K. Siegel, St. Louis, MO, Attorneys for Respondent.

PAUL J. SIMON, Judge.

Richard R. Frame (Frame) and Bill L. Bruce (Bruce) (collectively Appellants) appeal from a summary judgment of the Circuit Court of St. Louis County in favor of National Heritage Life Insurance Company (National Heritage), in liquidation, in its action to recover on a guaranty executed by Appellants in favor of Victoria Savings Association (Victoria), which was later transferred to the Resolution Trust Corporation (RTC) as receiver, a predecessor in interest of National Heritage.

Each appellant filed briefs setting forth separate points. Frame contends that the trial court erred in granting summary judgment because: (1) National Heritage failed to prove that an assignment or transfer of RTC's interest in fact occurred; (2) the holding in *Williams v. National Housing Exchange, Inc., et al.,* Civil Action 95 C 4243 (*Williams* ), that National Heritage owned the instruments executed by and on behalf of South Pointe Associates (South Pointe), including the guaranty, is not binding on Appellants in that they were not a party in that action and the issue of whether the South Pointe instruments were among those transferred by South Star Management Company, Inc. (South Star) to National Housing Exchange, Inc. (National Housing) was never fully and fairly litigated by any party in that action. In his third point, Frame contends the trial court erred in denying summary judgment to Appellants on the ground of statute of limitations because under the federal limitations statute an action brought by RTC or its assignee must be brought within the longer of six years or the period provided by applicable state law and the applicable state law is the four-year period provided by Texas law, and suit was not filed until more than six years after RTC took possession of the guaranty. In his fourth and final point, Frame contends the trial court erred in granting summary judgment to National Heritage because it failed to meet its burden, as the party asserting a claim under an alleged assignment of an alleged debt, to prove that there was money owed by South Pointe and the guarantors to Victoria, and if so, to prove the amount owed.

In his points, Bruce contends the trial court erred in: (1) granting National Heritage's motion for summary judgment and denying Appellants' motion for summary judgment because the four-year statute of limitations applicable to National Heri-

tage's claim for money allegedly owed to it pursuant to the guaranty expired on May 22, 1993, whereas National Heritage did not file its lawsuit until November 12, 1998; and (2) granting National Heritage's motion for summary judgment because there are genuine issues of material fact regarding: (a) Appellants' obligation to pay National Heritage the principal sum of $419,031.56 plus accrued interest pursuant to the terms of the guaranty because National Heritage failed to adduce probative evidence that Victoria actually made the advances on behalf of South Pointe to Franklin Savings Association (Franklin); and (b) National Heritage's status as the real party in interest to assert a claim on Appellants' guaranty by virtue of National Heritage's failure to substantiate that it was the bona fide assignee of Victoria's right to enforce Appellants' guaranty for payments made by Victoria on behalf of South Pointe. We reverse and remand with directions.

 Our review of a trial court's grant of summary judgment is essentially *de novo.* *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo.banc 1993). We will review such a judgment in the light most favorable to the party against whom judgment was rendered. *Id.* We will take as true all facts set forth by affidavit or otherwise in a party's motion unless contradicted by the non-moving party's response. *Id.*

In 1985 South Pointe, a Missouri limited partnership, entered into various financial agreements regarding South Pointe Apartments (Apartments), an apartment complex located in St. Louis County. Appellants were general partners of South Pointe. Initially, South Pointe obtained financing for the construction of Apartments through the issuance of bonds by the Industrial Development Authority of St. Louis County (IDA). The IDA bonds were secured, in part, by an irrevocable letter of credit issued by Franklin, in the state of Kansas. Franklin's letter of credit, in turn, was secured in part by a Facility Agreement executed by South Pointe on behalf of Franklin whereby South Pointe promised to reimburse Franklin for drawings made under the letter of credit. The letter of credit was further secured in part by collateral pledged by Victoria, in Victoria County, Texas, pursuant to a Collateral Pledge Agreement between the two savings associations. To persuade Victoria to pledge its collateral in favor of South Pointe, South Pointe entered into a Reimbursement and Indemnity Agreement (Reimbursement Agreement) with Victoria. Under the Reimbursement Agreement, South Pointe promised to reimburse Victoria in the event that Victoria was called upon to advance funds to Franklin on behalf of South Pointe because of South Pointe's failure to meet its financial obligations to Franklin under the Facility Agreement. Additionally, Appellants personally executed an Unconditional Guaranty of Payment and Performance (Guaranty) of the Reimbursement Agreement in favor of Victoria.

On June 28, 1989, the Federal Savings and Loan Insurance Corporation, predecessor of RTC, was appointed sole receiver for Victoria, at which time Victoria's interests were transferred to RTC as a matter of law.

National Heritage filed its petition as successor in interest to the rights of Victoria, through RTC, in the St. Louis County Circuit Court on November 12, 1998, as amended by interlineation on February 8, 2000, to update the alleged damages. National Heritage alleges that South Pointe failed to pay Franklin pursuant to the Facility Agreement between the two and that Victoria cured South Pointe's default

by making an advance to Franklin on South Pointe's behalf. National Heritage further alleges that South Pointe defaulted on its Reimbursement Agreement with Victoria by failing to repay the advances and, on the Guaranty, seeks reimbursement of the advanced funds, interest accrued thereon, attorneys fees, and costs of collection. After a number of extensions, Frame filed his answer on March 1, 1999, and Bruce filed his answer on March 3, 1999. Both answers denied liability on the Guaranty and raised as an affirmative defense, the bar of National Heritage's claim by the applicable statute of limitations. Later, on March 3, 2000, Appellants amended their respective answers by interlineation with leave, alleging that the four-year Texas statute of limitation was the applicable statute of limitations pursuant to the "alleged agreement" or to Section 516.190 RSMo 1994 (all further references herein shall be to RSMo 1994 unless otherwise indicated) because the cause of action arose and accrued in Texas.

On December 17, 1999, National Heritage filed its motion for summary judgment attaching as exhibits: (1) Bruce's answers to National Heritage's request for admissions; (2) Frame's answers to National Heritage's request for admissions; (3) a memorandum dated September 1, 1985 and signed by Appellants and Rupert Hays, the Chairman of Victoria, committing Victoria to providing outside collateral for the letter of credit issued by Franklin and a guaranty by Appellants ensuring prompt payment to Victoria of all obligations of South Pointe arising under Victoria's commitment; (4) Reimbursement Agreement between South Pointe and Victoria; (5) deed of trust on the real estate and improvements that were the subject of the bond issue, from South Pointe to Thomas M. Boudreau, as trustee, for the benefit of Victoria; (6) Guaranty signed by Appellants for the benefit of Victoria; (7)

the affidavit of Kurt A. Schoeb, former Vice President of Franklin, with exhibits: (a) Amended and Restated Outside Collateral Pledge Agreement between Victoria and Franklin dated August 28, 1986; (b) letter from Schoeb to Hayes, Chairman of Victoria, dated January 18, 1989; (c) letter from Schoeb to South Pointe dated January 18, 1989, notifying South Pointe of a default and the commencement of a cure period; and (d) letter from Shoeb to Bruce and Mike Glib at South Pointe dated January 31, 1989, acknowledging receipt of a $40,000.00 partial payment; (8) the affidavit of Glen S. Corso, president and chief operating officer of Victoria on April 21, 1989, with exhibits: (a) an Authorization for Funding indicating that Corso authorized a wire transfer from Victoria to Franklin referable to South Pointe in the sum of $379,630.52 on April 21, 1989; and (b) a document that would accompany the Authorization for Funding and would be used by the Loan Administration Department to enter the loan into the Victoria computer system; (9) notice of the June 28, 1989 appointment of the Federal Savings and Loan Insurance Corporation as sole receiver for Victoria; (10) the affidavit of Mark J. Chmielarski, custodian of records for National Heritage, with exhibits: (a) an allonge endorsed by RTC for Victoria paying to the order of South Star; and (b) a document included in Victoria's records regarding South Pointe showing an advance of $83,801.04 on May 22, 1989, a principal reduction of $44,400.00 on June 22, 1989, and an interest payment of $19,830.55 on May 28, 1991; (11) excerpts of the deposition of Chmielarski; (12) Indenture and Servicing Agreement between National Housing, as issuer, APX Mortgage Services, Inc. (APX), as servicer, and Continental Stock Transfer & Trust Company (Continental), as trustee (Indenture and Servicing Agreement) with exhibits:

(a) Master Debenture No. One consisting of a promise by National Housing to pay National Heritage the sum of $126,000,000.00 at the rate of eight and one-half percent per annum, collateralized by a pool of mortgages held in trust, attached to which are the articles of incorporation of National Housing; (b) a Mortgage Loan Schedule identifying a series of debtors by name and dollar amount; (c) a December 23, 1994 memorandum from Camden R. Fine, President and CEO of Midwest Mortgage Services, L.L.C. (Midwest) to Keith Pound, President of Resource Asset Management Inc. (RAM) c/o APX, and signed by both to memorialize an understanding requiring RAM to perform all duties and responsibilities of Midwest as servicer under the terms of the National Housing Exchange, Inc. Bond (Bond) dated December 28, 1993; (d) Sub Servicing Agreement between Midwest as servicer under the terms of the Bond and RAM as sub-servicer; and (e) a page from the Indenture and Servicing Agreement; (13) Rehabilitation and Injunction Order of the Court of Chancery of the State of Delaware in and for New Castle County in the case of *State of Delaware ex rel. The Honorable Donna Lee H. Williams v. National Heritage Life Ins. Co.,* C.A. No. 13530 (Delaware Action) appointing Donna Lee H. Williams, the Insurance Commissioner of the State of Delaware, as receiver for National Heritage; (14) Delaware Action Liquidation and Injunction Order against National Heritage and ordering the continuance of Williams as receiver; (15) Amended Declaratory Judgment Order of the United States District Court in *Williams,* finding that the rights of National Housing and APX under the Indenture and Servicing Agreement were terminated on December 7, 1994, and thereafter vested in National Heritage; (16) Order of the United States District Court in *Williams* Regarding the Missouri Mort-

gages (Order Regarding Missouri Mortgages), declaring that National Heritage has ownership of all interests with respect to the real property located in the State of Missouri and listed in Exhibit A, with exhibit A, titled Schedule of NHE Bond Loans Secured by Real Estate in the State of Missouri, and listing one mortgagor, South Pointe Association; (17) excerpts of the deposition of Bruce; and (18) excerpts of the deposition of Frame. The minutes of the Circuit Court indicate that National Heritage also filed a Memorandum in Support of its Motion on December 17, 1999. We note, the trial court's minute sheet reflects non-related entries.

Appellants filed their Motion for Summary Judgment along with a Memorandum in Support on December 17, 1999. National Heritage filed its Response to Appellants' Motion for Summary Judgment on January 21, 2000, along with a Memorandum in Opposition. Bruce and Frame also filed their individual Responses to National Heritage's Motion on January 21, 2000, along with a Joint Legal Memorandum in Opposition. On January 28, 2000, Appellants filed an Amended Motion for Summary Judgment, with exhibits: (1) portions of Chapter 16 of the Texas Civil Practice and Remedies Code regarding limitations on actions; and (2) the deposition of Chmielarski. National Heritage filed a Reply to Appellants' Response to its Motion on January 31, 2000. On February 10, 2000, National Heritage filed its Response to Appellants' Amended Motion for Summary Judgment. On March 3, 2000, Appellants filed another Memorandum in Support of their Motion.

On March 10, 2000 the trial court granted summary judgment for National Heritage and entered its judgment against Appellants, jointly and severally, in the amount of $419,031.56 in principal, $806,952.55 in interest, and $67,662.41 in

attorney fees, for a total award of damages in the amount of $1,293,646.50. Appellants' Motion for Summary Judgment was denied by the trial court on that date. Appellants filed a Joint Motion for Reconsideration and to Amend the Judgment on March 24, 2000, which was denied.

■ We note that the issue raised by Appellants' points regarding whether National Heritage was the proper party in interest and entitled to sue on the Guaranty was not properly preserved as an affirmative defense in their answers to National Heritage's petition or in their responses to National Heritage's motion for summary judgment. Rule 55.08; Rule 74.04(c). Therefore, we do not consider those issues.

Since Appellants' points are sufficiently similar, we consider them together. Appellants assert that National Heritage failed to adduce any probative evidence of any advances to Franklin by Victoria on behalf of South Pointe in their motion for summary judgment and its attachments.

National Heritage contends that the following supports its contention that a total of $436,431.56 was advanced by Victoria for the benefit of South Pointe: (1) affidavit of Corso, who was employed at Victoria from February, 1987, through late May, 1989, and served as president and chief operating officer of Victoria on April 21, 1989, states that he authorized a wire transfer from Victoria to Franklin referable to South Pointe in the sum of $379,630.52, the authorization was memorialized in Exhibit A thereto, the Authorization for Funding; (2) Exhibit B to Corso's affidavit is a document that would accompany the Authorization for Funding and would be used by the Loan Administration Department to enter the loan into the Victoria computer system. Further, Corso's affidavit states that the two exhibits "were made and kept in the regular course of the business of Victoria Savings and Loan Association, at or near the time of the event recorded therein, to-wit: payment by Victoria to Franklin, in the amount of $379,630.52"; (3) the affidavit of Chmielarski, wherein he refers to the information contained in Exhibit B, the document that was included in Victoria's records regarding South Pointe, displaying the name "South Pointe" at the beginning of each of its two pages, and showing an advance of $83,801.04 on May 22, 1989. The document further shows a payment of $44,400.00 of principal on June 22, 1989, and an interest payment of $19,830.55 on May 28, 1991, with an ending balance on June 22, 1989, of $419,031.56; (4) the Indenture and Servicing Agreement attached to which is Series IV of the Mortgage Loan Schedule setting forth the South Pointe loan with a principal stated balance of $419,031.56.

Appellants, responding to National Heritage's motion, deny its factual allegations unsupported by any attachments. The record on appeal reveals no attachments to Appellants' responses.

■ A trial court grants or denies motions for summary judgment on the basis of what is contained in the motions for summary judgment and the responses thereto. Rule 74.04(c); *Mothershead v. Greenbriar Country Club, Inc.*, 994 S.W.2d 80, 85 (Mo.App. E.D.1999). An appellate court's review is limited to documents set out with specificity in the motion for summary judgment and responses thereto. *Id.* Since Appellants failed to support their responses denying National Heritage's factual allegations that advances totaling $419,031.56 were made by Victoria on behalf of South Pointe, we will accept that evidence as true and deny Appellants' points. *ITT Commercial Finance Corp.*, 854 S.W.2d at 376.

In their final points, Appellants contend that the proper statute of limitations is the four-year Texas statute of limitations. Bruce contends the Texas statute is directly applicable to National Heritage's cause of action because of the language in the Guaranty stating that it "shall be construed in accordance with the local law of the State of Texas," and that Appellants consented to the "personal jurisdiction of the state and federal Courts located in Victoria County, Texas." Both Appellants contend the Texas statute is applicable by way of Missouri's borrowing statute, Section 516.190. They base this argument on the portion of the Guaranty stating that the Guaranty "shall in all things be performed and is performable in Victoria County, Texas." Frame also relies on Appellants' consent in the Guaranty to personal jurisdiction in Texas to support the adoption of the Texas statute through Section 516.190.

Frame admits the applicability of the federal statute of limitations for causes of action brought by RTC as receiver under 12 U.S.C. § 1821(d)(14) (1989) (Federal Statute). Bruce states in his brief that National Heritage's interjection of the Federal Statute is a "contrivance," but presents no argument to support its inapplicability. Both Appellants maintain that the use of the Federal Statute does not change the required application of the Texas statute of limitations.

National Heritage contends the Missouri ten-year statute of limitations for a written guaranty under Section 516.110 applies because Section 516.190 is not triggered by the facts here. They also contend that the Federal Statute applies to actions brought by assignees of RTC, but does not affect the use of the ten-year limitation because it is longer than the six-year limitation in the Federal Statute. National Heritage further contends that even if Section 516.190 applies, the cause of action originated in Missouri because the Guaranty is payable on demand.

■ Initially, we note that in his third point, Frame claims the trial court "erred in denying summary judgment to Messrs. Frame and Bruce on the ground of statute of limitations." Although the denial of summary judgment is not ordinarily a final judgment for the purposes of appeal, we will consider Frame's point since it can be construed as a challenge to summary judgment for National Heritage. *Missouri Property and Casualty Insurance Guaranty Association v. Petrolite Corporation*, 918 S.W.2d 869, 871 (Mo.App. E.D.1996).

■ It is clear from the record that the obligations of South Pointe and Appellants to Victoria were transferred to RTC upon its appointment as receiver on June 28, 1989. RTC transferred the ownership of these loans to South Star on August 23, 1993. South Star then transferred the loans to National Housing before National Housing entered into the Indenture and Servicing Agreement, which included Series IV of the Mortgage Loan Schedule setting forth the South Pointe loan with a principal stated balance of $419,031.56. On or about December 28, 1993, National Heritage purchased the entire Indenture and Servicing Agreement from National Housing, including the South Pointe loan. The Federal District Court confirmed National Heritage's indefeasible ownership of the items identified in the Indenture and Servicing Agreement in the *Williams* Amended Declaratory Judgment Order and Order Regarding Missouri Mortgages.

Instructive on the application of the Federal Statute of limitations to assignees of RTC to enforce a guaranty, is *UMLIC 2 Funding Corp. v. Butcher*, 333 Ark. 442, 970 S.W.2d 211, 214 (1998). The Arkansas Supreme Court, relying on *F.D.I.C. v. Newhart*, 892 F.2d 47 (8th Cir.1989), held

that the federal limitations period was appropriately *applied to an action on a note* brought by an assignee of RTC. *Id.* Because National Heritage obtained its interest in the South Pointe loan through various assignments that originated in RTC as receiver, it stands in the place of RTC as its assignee.

The Federal Statute provides in pertinent part:

(14) Statute of limitations for actions brought by conservator or receiver

(A) In general

Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation [RTC] as conservator or receiver shall be—

(i) in the case of any contract claim, the longer of—

(I) the 6 year period beginning on the date the claim accrues; or

(II) the period applicable under State law;

...

(B) *Determination of the date on which a claim accrues*

For purposes of subparagraph (A), the date on which the statute of limitation begins to run on any claim described in such subparagraph shall be the later of—

(i) the date of the appointment of the Corporation [RTC] as conservator or receiver; or

(ii) the date on which the cause of action accrues.

12 U.S.C. 1821(d)(14)(A) and (B).

Since the Federal Statute provides that the statute of limitations in a contract claim will be the longer of either the six-year period beginning on the date the claim accrues, or the period applicable under State law, it is necessary to determine the applicable limitation period under state law.

■ Although all parties request that we look to the language of the Guaranty to determine which is the "period applicable under state law," the "[n]otwithstanding any provision of any contract" provision of the Federal Statute places the statute of limitations question "beyond the ambit of the contractual choice of law provision." *F.D.I.C. v. Nordbrock,* 102 F.3d 335, 338 (8th Cir.1996). Therefore, we may not look to the language of the Guaranty in this determination.

Missouri's borrowing statute, Section 516.190, provides: "Whenever a cause of action has been fully barred by the laws of the state, territory or country in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state." Clearly, the borrowing statute applies if the cause of action has been fully barred by the statute of limitations in the state where the cause of action "originated."

■ The analysis of the origination of a cause of action pursuant to Section 516.190 is the same as the analysis of the accrual of a cause of action for the purposes of triggering the running of a statute of limitations pursuant to Section 516.100. A "cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained." Section 516.100. Here, Victoria made payments to Franklin in accordance with the agreement between Victoria and Franklin, and the agreement between Victoria and South Pointe, the Guaranty of which National Heritage

claims Appellants are liable. There is no dispute that Appellants and Victoria were the parties to the Guaranty, that Appellants were required to pay Victoria in the event of a default, and that Victoria is located in Victoria County, Texas. By nature of the fact that Victoria is located in Texas, the advances were made by Victoria in Texas and South Pointe's default due to its failure to repay Victoria occurred in Texas. Therefore, South Pointe and Appellants as guarantors were required to make their payment to Victoria in Victoria County, Texas to cure the default, causing the cause of action to accrue in Texas.

■ The statute of limitations in Texas is four years. § 16.004, Texas Civil Practice and Remedies Code. Therefore, pursuant to 12 U.S.C. § 1821(d)(14)(A) of the Federal Statute, six years is the appropriate time period during which National Heritage should have filed its cause of action on the Guaranty.

■ The parties disagree as to whether the statute began to run when RTC was appointed receiver pursuant to 12 U.S.C. § 1821(d)(14)(B)(i), or if the time began when the claim accrued pursuant to 12 U.S.C. § 1821(d)(14)(B)(ii). RTC was appointed receiver on June 29, 1989. National Heritage contends the cause of action accrued on June 22, 1989, when it claims Victoria made its "last advance to South Pointe." Our review of the record indicates no advances were made by Victoria to South Pointe, and that only a $44,400.00 payment of principal was made by South Pointe to Victoria on June 22, 1989. We recognize the possibility that National Heritage intended to argue the cause of action accrued on Victoria's last advance to Franklin on behalf of South Pointe, which occurred on May 22, 1989. In any event, the filing of the cause of action was more than six years from either date. Because the appointment of RTC

and both dates on which the cause of action arguably accrued took place more than six years before National Heritage filed its petition on November 12, 1998, the claim is time barred under the Federal Statute.

Judgment reversed and cause remanded with directions to enter judgment for Frame and Bruce.

ROBERT G. DOWD, Jr., P.J., and SHERRI B. SULLIVAN, J., concur.